IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned On Briefs August 14, 2012

## STATE OF TENNESSEE v. ERIC PERNELL TAYLOR

**Appeal from the Circuit Court for Montgomery County**
**No. 41001195    Michael R. Jones, Judge**

_____

**No.  M2011-01996-CCA-R3-CD - Filed February 26, 2013**

_____

Appellant, Eric Pernell Taylor, was on probation after entering guilty plea in the Montgomery County Circuit Court on January 7, 2011.  On July 13, 2011, a probation violation warrant was issued alleging that Appellant had failed to report his arrest, failed to report to his probation officer, failed to pay litigation taxes, and tested positive for cocaine.  He also admitted to the cocaine usage in writing.  After holding a probation revocation hearing, the trial court revoked Appellant's probation and ordered him to serve his sentence in incarceration.  After a thorough review of the record, we conclude that the trial court did not abuse its discretion in revoking the probation or ordering the service of the sentence in incarceration.  Therefore, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee for the appellant, Eric Pernell Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; John W. Carney, Jr., District Attorney General, and Dan Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. FACTS

Appellant entered a guilty plea for aggravated assault in the Montgomery County Circuit Court on January 7, 2011.  As part of the plea agreement, the trial court sentenced

Appellant to four years and six months. The sentence was suspended, and Appellant was placed on supervised probation.

On July 13, 2011, a probation violation warrant was filed against Appellant. The trial court held a hearing on August 19, 2011. At the hearing, Amanda Guillot testified that she lived next to Toni Valliant. One evening, she was sitting on her front porch and heard Ms. Valliant screaming, "Please stop hitting me and don't hurt my baby." Ms. Valliant's baby was five or six months old at the time.

Ms Guillot ran next door to see what was happening. A man she did not recognize opened the door. Ms. Guillot entered the home to retrieve the baby. Appellant had his foot on the baby's head. Ms. Guillot elbowed Appellant out of the way and grabbed the baby. Appellant grabbed the baby back from her and Ms. Guillot began yelling for Ms. Valliant to come back into the house. Ms. Valliant came back into the house. Appellant grabbed Ms. Valliant by the hair. He pushed Ms. Valliant and the baby into the wall, and they fell down onto the floor. This altercation caused Ms. Valliant to have a "busted lip." Ms. Guillot elbowed Appellant out of the way again and got Ms. Valliant and the baby out of the house. When they got to the front of the house, the police had already arrived.

On cross-examination, Ms. Guillot admitted that she had had an altercation with Ms. Valliant about four days before the incident in question. This altercation led to bruising on one side of Ms. Valliant's face.

Officer David Johnson with the Clarksville Police Department testified that on July 9, 2011, he was called to a domestic assault incident. When he arrived, there was a woman screaming. Office Johnson proceeded to the trailer that was the site of the incident and saw another distraught woman carrying a baby. She said that nothing was wrong. However, he noticed that her lip was bleeding and he inquired further. He eventually discovered that the woman holding the baby was Ms. Valliant. She originally gave him a false name because there were warrants out for her arrest.

Officer Johnson also spoke with Appellant. He described Appellant as excited. As he asked Appellant questions, Appellant responded that he had not done anything wrong.

Ms. Valliant also testified. She said that Appellant was staying at her house at the time of the incident, and they were friends. She said that night they were intoxicated, and they were playing. She said that he accidentally hit her in the mouth. She said that Appellant thought that she was impaired and was holding her baby. Appellant fell on her while he was holding the baby. Neither one of them was injured.

Ms. Barbara Strasser with the Department of Probation and Parole testified at the hearing. She testified that the bases for the probation violation warrant included Appellant's failure to report his arrest for domestic assault, failure to report to his probation officer, and that he had tested positive for cocaine. Appellant signed an admission that he had used cocaine. Appellant also had not paid any litigation taxes.

At the conclusion of the hearing, the trial court held that Appellant had violated his probation. The trial court based the revocation on the following:

> He tested positive for cocaine and he has had since January 7th to at least make some payments on the litigation taxes; apparently, he had done none, done absolutely none of those.
>
> He has also committed offenses, at least committed an assault, causing bodily injury, it could be recklessly bodily injury, but at least the evidence is preponderance standard, he's guilty of at least an assault. Guilty of an assault or at least an attempted child abuse.

The trial court ordered that Appellant's sentence be put into effect and served with the Tennessee Department of Corrections. Appellant appeals the revocation of his probation.

## ANALYSIS

On appeal, Appellant argues that the trial court erred in revoking his probation. He argues that the State failed to meet its burden that Appellant violated his probation by a preponderance of the evidence and that the trial court should have resentenced Appellant "for the remainder of the unexpired term to any community-based alternative to incarceration."

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. T.C.A. §§ 40-35-310 & -311. After finding a violation of probation and determining that probation should be revoked, a trial judge can: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two years. *See* T.C.A. §§ 40-35-308(c) & -311(e); *State v. Hunter*, 1 S.W.3d 643, 647-48 (Tenn. 1999). The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an

abuse of discretion standard of review, rather than a de novo standard. *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). To find an abuse of discretion "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). The evidence at the revocation hearing need only show that the trial court exercised a conscientious and intelligent judgment in making its decision. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

In the case at hand, we conclude that the trial court did not abuse its discretion in revoking Appellant's probation. The record reflects that Appellant had violated multiple rules of his supervision. The fact that he had tested positive for cocaine and admitted in writing that he had been using cocaine is alone sufficient support for revocation.

Appellant's argument on appeal is essentially an attack on the credibility of the witnesses and an assertion that the trial court believed the wrong story. "In probation revocation hearings, the credibility of the witnesses is for the determination of the trial judge, who is in the best position to observe witness demeanor." *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Therefore, we cannot second-guess the trial judge's determination with regard to this issue.

He also argues that "the trial court may not rely on the mere fact of an arrest or an indictment to revoke a defendant's probation sentence." Appellant is correct about this assertion. A new arrest and pending charges are proper grounds on which a trial court can revoke a defendant's probation, however a trial court may not rely on the mere fact of an arrest or an indictment to revoke a defendant's probation. *See Harkins*, 811 S.W.2d 79, 83 n.2 (Tenn. 1991). A revocation on this basis requires the State to "produce evidence in the usual form of testimony" in order to establish the probationer's commission of another offense while on probation. *State v. Walter Lee Ellison, Jr.*, No. 01C01-9708-CR-00361, 1998 WL 272955, at *2 (Tenn. Crim. App., at Nashville, May 29, 1998); *see State v. Michael Chaney*, No. 01C01-9801-CC-00010, 1999 WL 97914, at *1 n.2 (Tenn. Crim. App., at Nashville, Feb. 18, 1999).

The State presented the testimony of both a third party witness, Ms. Guillot, and Officer Johnson. This Court has held that the testimony of a police officer concerning the facts of an arrest may be sufficient to support the revocation of probation. *State v. Eric L. Abell*, No. M2006-01981-CCA-R3-CD, 2007 WL 2088949, at *5 (Tenn. Crim. App., at Nashville, Jul. 23, 2007) (citing *State v. Chris Allen Dodson*, M2005-01776-CCA-R3-CD, 2006 WL 1097497, at *3 (Tenn. Crim. App., at Nashville, Mar. 31, 2006)). Therefore, we find no abuse of discretion with regard to the trial court's reliance in part upon Appellant's arrest.

-4-

Appellant also argues that the trial court should have been resentenced to a community-based alternative to incarceration. As stated above, a trial judge can: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two years. *See* T.C.A. §§ 40-35-308(c) & -311(e); *Hunter*, 1 S.W.3d at 647-48. The trial court may choose to order the defendant to serve his sentence in incarceration as originally ordered. In the case at hand, the trial court decided to do so. We find no abuse of discretion in this decision.

Based on the record before us, we find that there has been no abuse of discretion in the revocation of probation and in ordering Appellant to serve his sentence in incarceration.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

_____
JERRY L. SMITH, JUDGE